CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 0 9 2005

JOHN F. CORCORAN, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DEBORAH B. FREEMAN, | )  |
| Plaintiff, | ) Civil Action No. 7:04CV00276 |
| v. | ) MEMORANDUM OPINION |
| JOHN E. POTTER, POSTMASTER GENERAL, | ) |
| and | ) By: Samuel G. Wilson |
| THE UNITED STATES OF AMERICA, | ) United States District Judge |
| Defendants. | ) |

In July 2000, Deborah Freeman entered into a settlement agreement with her employer, the United States Postal Service (USPS), settling race discrimination and sexual harassment claims which she had filed in this court. In the current suit, Freeman seeks to enforce that settlement agreement, and she claims that the USPS has retaliated against her for filing her original suit and for engaging in other Title VII-protected activities. The matter is before the court on the USPS's motion for summary judgment[1] and Freeman's motion for summary judgment on her breach of contract claim. The court finds that it has jurisdiction to adjudicate Freeman's breach of contract claim and that genuine issues of material fact remain in relation to the claim. Accordingly, each party's motion for summary judgment on the claim is denied. As for her Title VII retaliation claims, the court finds that Freeman has failed to exhaust several and that the USPS is entitled to judgment as a matter of law on those that remain. Accordingly, the

---

[1] The USPS has styled its motion a "motion to dismiss"; however, both the USPS and Freeman have submitted materials extraneous to the pleadings. Thus, pursuant to Fed. R. Civ. P. 12(b)(6), the court treats the USPS's motion as a motion for summary judgment subject to Fed. R. Civ. P. 56.

USPS's motion for summary judgment as to Freeman's claims under Title VII is granted.

## I.

Freeman began working for the USPS in 1988. In 2000, Freeman filed a complaint in this court, alleging racial discrimination and sexual harassment by a group of coworkers in the Roanoke branch. Freeman and the USPS entered into a settlement agreement in July 2002, under which the USPS agreed to pay Freeman $140,000; to train and reassign Freeman as a window clerk in the Hollins post office branch; to allow Freeman to purchase 300 hours of back leave; to allow Freeman to work separate from the individuals she claimed had discriminated against and harassed her; to assign Freeman to weekday, daytime shift for a period of four years; to allow Freeman to participate in a 30-day "shadowing" assignment; and to allow Freeman to participate in diversity training. The parties filed a joint motion to dismiss, which the court granted.

Freeman claims that the USPS never complied with certain provisions of the agreement. She claims that the USPS never placed her in a window clerk position but instead placed her in a distribution window clerk position, which, according to Freeman, was only a window clerk position in name. Freeman also claims that the USPS failed to offer her a proper "shadowing" assignment and that the USPS violated the agreement by moving her from the Hollins branch to the Home Shopping Network (HSN) branch in December 2002. The USPS claims that an unexpected decline in mail volume at the Hollins branch prompted Freeman's transfer. The USPS next transferred Freeman to the HSN carrier annex in March 2003, and Freeman claims that supervisors there ignored her requests for administrative leave. At that point, Freeman filed

2

a motion in her previous civil suit to enforce the settlement agreement.

In February 2004, the USPS transferred Freeman to the Cave Spring branch. The USPS claims that it had decided to re-route HSN mail through the main Roanoke branch but that it could not transfer Freeman there because doing so would have forced Freeman to work with those who allegedly harassed her previously. The USPS claims it decided on the Cave Spring branch for Freeman because it could transfer her there without violating a collective bargaining agreement. Freeman claims that the USPS denied her overtime opportunities during her brief stint at the Cave Spring branch. She also claims that she requested administrative leave with pay pursuant to the settlement agreement for March 8-19, 2004, but that the USPS denied the request, a decision Freeman claims prompted her to take "vacation leave." The USPS classified Freeman as absent without leave (AWOL) as of March 8 and sent her letters explaining that her request for administrative leave had been denied and that continued failure to report to work without requesting emergency or medical leave with appropriate documentation could result in termination. The USPS also sent Freeman an offer for a "shadowing" assignment at the Cloverdale, Daleville, Montvale, or Thaxton branch. Freeman declined the offer, though, citing the USPS's alleged failure to comply with other provisions of the settlement agreement.

On March 3, 2004, Freeman sent a letter to an EEO counselor, detailing her various claims against the USPS. Meanwhile, by order dated March 18, 2004, the court denied Freeman's motion to enforce the settlement agreement for lack of subject matter jurisdiction but did not address the question of whether it would have jurisdiction to adjudicate a standalone suit seeking enforcement of the agreement. Soon after, on April 12, 2004, Freeman filed a charge with the EEOC, claiming that the USPS had discriminated against her by never placing her in a

window clerk position; by moving her from the Hollins branch; by moving her to the HSN carrier annex; by failing to respond to her September 2, 2003, request for administrative leave; by moving her to the Cave Spring branch; by denying her overtime opportunities; by denying her March 8, 2004, request for administrative leave; and by classifying her as AWOL from March 8-19, 2004. She also claimed that fellow employees and supervisors at each branch had created an "atmosphere [that] was extremely hostile."

Freeman filed the current suit in May 2004, claiming that the USPS breached the terms of their settlement agreement by failing to assign her to a window clerk position, by failing to provide a proper "shadowing" assignment, and by transferring her from the Hollins branch. The EEOC issued a decision on Freeman's charge on June 15, 2004, at which point Freeman amended her complaint to include claims that the USPS retaliated against her in violation of Title VII by transferring her from the Hollins branch to the Home Shopping Network (HSN) branch on December 28, 2002; by moving her to the HSN carrier annex in March 2003; by failing to respond to a September 2, 2003, request for administrative leave; by transferring her to the Cave Spring branch in February 2004; by having never placed her in a window clerk position; by denying her March 8, 2004, request for administrative leave with pay; by threatening to terminate her employment after she asserted her right to administrative leave; by threatening to transfer her back to the Roanoke branch where the original discrimination and harassment allegedly occurred; by classifying her as absent without leave (AWOL) from March 8-19, 2004; and by denying her "overtime opportunities" at the Cave Spring branch. She also added a claim that the USPS subjected her to a hostile work environment due to her Title VII protected activity.

All the while, Freeman had failed to report to work and had failed to request emergency

4

or sick leave as instructed by the USPS, and, by letter dated August 7, 2004, terminated her employment. Freeman then filed a second charge with the EEOC regarding her termination on August 19, 2004. After the EEOC issued a decision, Freeman amended her complaint to include a retaliation claim regarding her termination.

## II.

The USPS argues that the court lacks subject matter jurisdiction to adjudicate Freeman's claim regarding breach of the settlement agreement, explaining that, as a contract claim against the United States, the claim falls under the Tucker Act and that Freeman therefore may only raise it at the Court of Federal Claims. See 28 U.S.C. § 1491(a)(1). However, "it is well settled that a claim brought against the [USPS] in its own name is not a claim against the United States and thus is not governed by the Tucker Act." Licata v. United States Postal Service, 33 F.3d 259, 263-64 (3d Cir. 1994) (citing White v. Bloomberg, 501 F.2d 1379, 1384 n6 (4th Cir. 1974)). Further, the Postal Reorganization Act grants federal district courts subject matter jurisdiction over claims brought by and against the USPS and waives the USPS's sovereign immunity. See 39 U.S.C. §§ 401(1), 409(a); White, 501 F.2d at 1384 n6. Accordingly, the court finds that it has subject matter jurisdiction over Freeman's claim that the USPS breached the settlement agreement.

## III.

Both Freeman and the USPS have moved for summary judgment on Freeman's breach of contract claim; however, the court finds that genuine issues of material fact remain regarding the intent of the parties when they entered into the settlement agreement. The settlement agreement states, "Defendant agrees to transfer plaintiff as soon as practicable to a full time window clerk

5

position in the Hollins Branch of the Roanoke Post Office. This provision is ambiguous as to the duration of the contemplated Hollins position, rendering the intent of the parties unclear. Accordingly, the court denies the competing motions for summary judgment.

## IV.

Freeman also claims that the USPS engaged in a course of disparate treatment in response to her engagement in Title VII-protected activities. This court must dismiss any Title VII claims concerning which a plaintiff did not consult an EEO counselor during the time period prescribed by regulation. See Nealon v. Stone, 958 F.2d 584, 589-90 (4th Cir.1992). As an employee filing a claim of discrimination against a federal agency, Freeman had forty-five days from the alleged discriminatory acts to contact an EEO counselor. See 29 C.F.R. § 1614.105(a)(1). She contacted an EEO counselor for the first time on March 3, 2004, meaning, this court may only adjudicate her claims of retaliatory discrimination pertaining to acts occurring on or after January 18, 2004. The court therefore dismisses Freeman's claims pertaining to her transfer from Hollins to HSN, her transfer from HSN to the HSN carrier annex, and the USPS's alleged failure to respond to her September 2, 2003, request for administrative leave, all of which allegedly occurred before January 18, 2004.[2]

As part of her prima facie showing under Title VII, Freeman must demonstrate that each of the aggrieved employer acts amounted to a "tangible employment action," an employer action

---

[2]Further, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Transfers and decisions related to benefits are discrete acts. See id. at 114. Thus, Freeman's timely exhaustion of other claims cannot save these non-exhausted claims. Nevertheless, Freeman properly exhausted her hostile work environment claim, and while these acts are no longer actionable on their own, evidence of them would be admissible to support the hostile work environment claim. See id. at 115-19.

6

affecting the very terms and conditions of employment. Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999). Freeman has failed to demonstrate that the actions at the center of several of her claims were "tangible employment actions." A transfer or position reassignment is only a "tangible employment action" if the plaintiff shows "that the reassignment had some significant detrimental effect on her." Id. Freeman claims that her transfer to the Cave Spring Branch in 2004 was a "tangible employment action"; however, she has not shown that the transfer affected her pay or benefits or that it negatively impacted her in any other way. Similarly, Freeman claims that the USPS's failure to ever place her in a window clerk position was an actionable "tangible employment action"; however, she has failed to demonstrate why such a position would be preferable or more advantageous than the positions to which the USPS assigned her. She has not alleged that she would have made more money as a window clerk or that there would have been greater opportunities for advancement; nor has she alleged that her assigned positions were more stressful or demanding than that of a window clerk. Id. at 255-56. Accordingly, no reasonable jury could conclude that the USPS's transfer of Freeman and their alleged failure to place her in a window clerk position amounted to "tangible employment actions," and the court therefore dismisses the claims.

Likewise, an unrealized threat that ultimately does not affect the terms and conditions of employment is not a "tangible employment action." See Munday v. Waste Management of North America, Inc., 126 F.3d 239, 243 (4th Cir. 1997). Freeman claims that her supervisor threatened to transfer her back to the Roanoke branch, where the original discrimination allegedly occurred. Even if Freeman proved that her supervisor issued the threat, Freeman does not claim that her supervisor took action on the threat or that the threat otherwise affected the terms and conditions

7

of her employment. Accordingly, a reasonable jury could not find that the threat rose to the level of a "tangible employment action," and the court dismisses the claim.

Even assuming Freeman could make out a full prima facie showing regarding her remaining claims of disparate treatment, the USPS has alleged legitimate, non-discriminatory reasons for its actions, and Freeman has not carried her burden of showing that the USPS's proffered reasons are nothing more than pretexts to disguise retaliation. See Bryant v. Aiken Regional Medical Centers Inc., 333 F.3d 536, 543-44 (4th Cir. 2003). The USPS claims that Freeman's supervisor denied her March 2004 request for administrative leave with pay because such leave is generally not granted and because he did not interpret the settlement agreement as requiring him to grant it to Freeman. Even assuming, as Freeman argues, that his interpretation of the settlement agreement was erroneous, the USPS has proffered a reason for denying the leave unrelated to Freeman's engagement in protected activity, and Freeman has not forecasted evidence capable of exposing the USPS's proffered reason as a pretext. The USPS also explains that Freeman's lack of overtime opportunities at Cave Spring had nothing to do with her protected activity, claiming that Freeman's supervisor at the Cave Spring branch did not offer her overtime because she had not added her name to the branch's list of employees seeking overtime. Freeman does not deny that she failed to do so, and has proffered no evidence to counter the USPS's showing.

The USPS has also offered non-discriminatory reasons for classifying Freeman AWOL from March 8-19, 2004, for "threatening" to terminate her, and for eventually terminating her employment, explaining that the USPS had not granted Freeman leave of any sort to cover her long absence when she refused to report to work at Cave Spring and that Freeman was therefore

8

subject to the same discipline any other employee would have been, which included AWOL classification, letters warning her of the consequences of continually failing to report to work, and eventually termination. Freeman does not deny that she refused to report to work while at Cave Spring, and she has not rebutted the USPS's proffered non-discriminatory reason. For example, she has not forecasted direct evidence that the action was taken in response to her engagement in protected activities, and she has not claimed that she can point to similarly situated individuals who received different treatment after refusing to report to work for an extended length of time. Because Freeman has failed to rebut the USPS's proffered non-discriminatory reasons for its actions, the court dismisses Freeman's remaining disparate treatment claims.

V.

Freeman also appears to claim that the USPS created an "abusive working environment" in violation of Title VII. To prevail on her claim, Freeman must show that she was harassed because of her engagement in protected activity, that the harassment was unwelcome, that the harassment was such that a reasonable person would have found the environment to be hostile and abusive, and that some basis exists for imputing liability onto the USPS.[3] See Hartsell v. Duplex Products, Inc., 123 F.3d 766, 772 (4th Cir. 1997). Freeman has failed to meet her burden as to the third element: even assuming she could prove that the USPS took each of the actions of which she complains, Freeman has not forecasted evidence capable of showing that a reasonable

---

[3] Freeman also notes that coworkers at each branch filed grievances upon her arrival; however, she has never alleged that her coworkers were aware of her protected activity or that the grievances were in response to her protected activity rather than to concerns over seniority and promotion opportunities. Accordingly, the court will not consider the grievances as part of Freeman's hostile work environment claim.

9

person would have found the working environment to be so hostile or abusive as to yield an "abusive working environment" in violation of Title VII. Freeman cannot show that the USPS would not have taken any of the aggrieved actions but for her engagement in protected activity. Id. at 772-73. The USPS cites non-discriminatory reasons for each of its actions that Freeman has not overcome. Moreover, Freeman has failed to demonstrate that the actions taken against her created an air of hostility. It appears that she received civil, appropriate notices of each of the actions taken and that all actions taken complied with USPS policy, and, though a reasonable employee in her position might not have welcomed each of the USPS's actions, Freeman has failed to elucidate how she might convince a jury that a reasonable person would have found her working environment to be so hostile or abusive as to violate Title VII.[4]

## VI.

For the reasons stated herein, the parties' motions for summary judgment on Freeman's breach of settlement agreement claim are denied, and the defendants' motion for summary judgment on Freeman's Title VII claims is granted.

ENTER: This 8th day of September, 2005.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Though it is not always appropriate, a court may grant summary judgment against a plaintiff claiming hostile work environment when the claim is "so far from the paradigmatic case of . . . harassment, that summary judgment [is] clearly appropriate." See Hartsell, 123 F.3d at 773. Because Freeman's allegations are devoid of claims of personal attacks and pervasive continuous chiding, the court finds it unnecessary to submit Freeman's claim to a jury.

10